

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

UNITED STATES OF AMERICA

-v-                                              No. 10 Cr. 228 (LTS)

GEORGE PEREZ,

        Defendants.

------------------------------------------------------x

ORDER

By letter dated November 11, 2013 (docket entry no. 529), Defendant George Perez, contends that certain trial testimony implicates potential violations of his due process disclosure rights under Brady v. Maryland[1] and/or Giglio v. United States[2] ("Brady/Giglio") and seeks relief including, inter alia, orders requiring the Government to interview certain current or former members of the investigative and prosecution teams, and to disclose certain specific information. The Court has reviewed and considered carefully Mr. Perez's letter application, the Government's response thereto and Mr. Perez's reply. The parties' familiarity with those submissions is presumed. For the reasons that follow, Mr. Perez's request is denied in its entirety.

As the Second Circuit explained in United States v. Coppa, 267 F.3d 132, 139 (2d Cir. 2001), "a Brady violation occurs only where the government suppresses evidence that 'could reasonably [have been] taken to put the whole case in such a different light as to undermine confidence in the verdict.'" (Quoting Kyles v. Whitley, 514 U.S. 419, 435 (1995) (alterations by Coppa Court).) Thus, "[al]though the government's obligations under Brady may be thought of as

---

[1] See Brady v. Maryland, 373 U.S. 83 (1963).

[2] See Giglio v. United States, 405 U.S. 150 (1972).

a constitutional duty arising before or during the trial of a defendant, the scope of the government's constitutional duty – and, concomitantly, the scope of a defendant's constitutional right – is ultimately defined retrospectively, by reference to the likely effect that the suppression of particular evidence had on the outcome of the trial." Coppa, 267 F.3d at 140.  The question of whether the Brady/Giglio right has been violated – whether the undisclosed exculpatory or impeachment evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict"[3] – thus can only be assessed post-verdict and in light of the entire body of evidence presented at trial.  The Constitution does not require the immediate disclosure of all exculpatory and impeachment evidence upon the request of the defense, and Brady/Giglio and their progeny do not authorize a trial court to require such disclosure.  Coppa, 267 F.3d at 146.

The limitation of the scope of the defendant's rights under Brady/Giglio carries with it a concomitant and weighty duty on the part of the Government.  The Government must, at the risk of violation of the defendant's constitutional rights and vacatur of any conviction procured, determine in the course of pre-trial and trial proceedings whether information in its possession must be disclosed and must make such disclosure in time for effective use of that information at trial.  This is

> a result-affecting test that obliges a prosecutor to make a prediction as to whether a reasonable probability will exist that the outcome would have been different if disclosure had been made.  To put it another way, . . . the extent of the disclosure required by Brady [is] dependent on the anticipated remedy for violation of the obligation to disclose: the prosecutor must disclose evidence if, without such disclosure, a reasonable probability will exist that the outcome of a trial in which the evidence had been disclosed

---

[3] Youngblood v. W. Virginia, 547 U.S. 867, 870 (2006) (citation and internal quotation marks omitted).

would have been different.

Coppa, 267 F.3d at 142. The prosecutor "must therefore make a prediction . . . as to how the nondisclosure of [impeachment] evidence will be viewed after the trial." Id. at 143. As the Supreme Court has made clear, "[t]his means, naturally, that a prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence." Kyles, 514 U.S. 439. "This is as it should be. Such disclosure will serve to justify trust in the prosecutor as 'the representative . . . of a sovereignty . . . whose interest in a criminal prosecution is not that it shall win a case, but that justice shall be done.'" Id. (quoting Berger v. United States, 295 U.S. 78, 88 (1935) (alterations in original)). To sum up, it is the responsibility of the prosecution, not the Court, at this stage, to determine whether disclosure of the information that Mr. Perez suspects would constitute Brady or Giglio impeachment material is required. The Court must, accordingly, deny Mr. Perez's requests for directive relief.

Having said that, the Government's response to Mr. Perez's application indicates that the Government may not fully comprehend the scope of its Brady/Giglio obligation. The Government represents that it is not "aware of any information – in any form – that would undermine [Matthew] Cohen's testimony" in the relevant respect (docket entry no. 530 at 8-9) and that the defendants "have every document, of which we are aware, documenting Mr. Cohen's prior statements" (id. at 10) (emphasis in original). However, the Government appears to deny that it has any obligation whatsoever to make further inquiries to the extent necessary to determine whether the Government-employed investigators and members of the prosecution team to whom Mr. Cohen claims to have communicated material information during the investigation and/or prosecution can corroborate or deny Mr. Cohen's account of the content of those communications. (See id. at 10).

To be clear, the prosecution's obligation under Brady/Giglio is to consider, and investigate and disclose if necessary, all information in the possession of the current prosecution team and of all who have acted on the Government's behalf in the relevant investigation and prosecution, whether the information has previously been reduced to writing or not. See United States v. Rodriguez, 496 F.3d 221, 225, 226 (2d Cir. 2007) ("From the fact that the Government is not required to make notes of a witness's statements, it does not follow that the Government has no obligation to inform the accused of information that materially impeaches its witness. . . . The obligation to disclose information covered by the Brady and Giglio rules exists without regard to whether that information has been recorded in tangible form."). Furthermore, knowledge by the defense of the identity of a potentially favorable witness is not necessarily sufficient to meet a Brady/Giglio obligation if the material information possessed by the witness is not made known to the defense in time for effective use at trial. See Leka v. Portuondo, 257 F.3d 89, 102, 103 (2d Cir. 2001) (holding that disclosure at trial stage of only name of witness "afforded insufficient opportunity to use the information"; "the options left open to the defense were to expend and perhaps waste scarce trial resources on a possible dry hole, or to call a witness cold, which would be suicidal. These are not opportunities for use.").

Nor, contrary to the Government's assertion in its opposition letter, does it appear that there is no conceivable set of circumstances under which the information requested by the defense could constitute Giglio material. If any of the individuals to whom Mr. Cohen claims to have communicated the statement prior to trial has a definitive recollection that Mr. Cohen made no such disclosure, the impact on the jury's assessment of Mr. Cohen's credibility could conceivably be significant. Depending on the content of the entire trial record with respect to Perez, the failure to disclose the contrary recollection could (alone or together with other

omissions) conceivably support a finding of a Giglio violation.

The Government, accordingly, has an obligation to make good faith determinations as to whether the inquiries suggested by the defense are warranted, to consider whether any additional information obtained should be disclosed in order to avoid a potential Brady/Giglio violation and to make any appropriate disclosures in time for effective use at trial.

This Order resolves docket entry numbers 529 and 548.

SO ORDERED.

Dated: New York, New York
December 4, 2013

LAURA TAYLOR SWAIN
United States District Judge